IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Victoria Treble, Ludovic Dubrana<br><br>     Plaintiffs<br><br>     v.<br><br>Swiss Chalet, Inc. D/b/a Double<br>Tree by Hilton, San Juan; Chubb<br>Insurance Company of Puerto Rico;<br>Universal Equipment Sales and<br>Service, Corp.; Multinational<br>Insurance Company; X and Y<br>COMPANY;  A INSURANCE COMPANY;<br><br>     Defendants | Civil no.<br><br>Plaintiffs Demand<br>Trial by Jury |

**COMPLAINT**

TO THE HONORABLE COURT:

**Come now** the Plaintiffs, Victoria Treble and Ludovic Dubrana, through the undersigned attorneys, and before this Honorable Court respectfully allege and pray as follows:

## I. THE PARTIES

1.  Plaintiffs, Victoria Treble and Ludovic Dubrana are both of legal age, single and domiciled in the State of New York.

2.  Co Defendant, Swiss Chalet, Inc., d/b/a Double Tree by Hilton San Juan, " Double Tree Hotel")  is a domestic, for profit corporation, with principal offices located in San Juan, Puerto Rico, that is the owner, manager and

administrator of the Double Tree Hotel, as well as the hotel employer, located at 105 De Diego Ave., Condado, San Juan, Puerto Rico.

3.   By information and/or belief, CHUBB Insurance Company of Puerto Rico is a duly registered insurance company authorized to conduct the business of insurance in the Commonwealth of Puerto Rico, that at the time of the accident and incident described in this complaint had issued and had in full force and effect, one or more insurance policies to cover the legal liability for negligence of the Double Tree Hotel and its employees for accidents to include the incident as described in this complaint.

4.   By information and belief, Universal Equipment Sales and Service Corp.,("Universal") is a corporation duly organized under the laws of Puerto Rico, with principal offices located in Puerto Rico, that sold certain machinery and provided services to said machinery that was installed at the Double Tree Hotel related to the incident described in this complaint.

5.   Multinational Insurance Company is an insurance company organized in accordance with the laws of Puerto Rico, that at the time of the incident described in this complaint had issued one or more insurance policies to cover the legal

2

liability and excess liability of its client Universal Equipment Sales and Service Corp in the performance of its business functions, equipment sold and maintenance performed regarding said equipment and services at the Double Tree hotel as per the incident further described.

6.  X Company is the fictitious name used to denominate another company that also owns, operates and manages together with the rest of the defendants the Double Tree Hotel, that is also responsible to the plaintiffs for the incident and damages suffered by plaintiffs as described in this complaint.

7.  Y Company is the fictitious name used to denominate another company or commercial enterprise that with the rest of the defendants is also responsible for the incident at the Double Tree Hotel as described in this complaint, and all damages suffered by plaintiffs as a result.

8.  A insurance company, is the fictitious name used to denominate the currently unknown insurance company that at the time of the incident described in this complaint had issued and had in full force, as per the terms and conditions of the applicable insurance policy, coverage to cover the legal liability of one or more of the above-named defendants, to include unknown defendants, for the incident

described in this complaint. Once the identity of said insurance company is made known, the complaint may be amended so as to properly name and include the additional insurance company defendant.

## II. JURISDICTION

7.  This Honorable Court has subject matter jurisdiction to entertain the instant case pursuant to *28 U.S.C. section 1332 (a) (1) be*cause this is a case or controversy between citizens of different states and the amount in controversy is in excess of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

8.  Pursuant to 28 U.S.C. Section 1392 (a) (2), venue of this action is proper in this district because the events, acts or omissions giving rise to the claims occurred in Puerto Rico.

## III. TOLLING OF THE STATUTE OF LIMITATIONS

9. The incident that gives origin to the present case occurred on February 14, 2025, at Double Tree Hotel, San Juan, and thus, as per the Civil Code of Puerto Rico of 2020, at the time of filling the complaint the statute of limitations of one (1) year has not elapsed.  See Articles 1191 (f) and 1204 (a) of the  Civil Code of Puerto Rico.

## IV. <u>THE FACTS AND THE DAMAGES</u>

10. Ms. Treble and Mr. Dubrana were guests at the Double Tree Hotel starting on February 13, 2025. The reservation at the hotel had been made by Mr. Dubrana and he was issued confirmation number 15904151397. They arrived in Puerto Rico for a short vacation and to celebrate Valentine's Day and were assigned room 328 at the Double Tree Hotel.

11. On the early morning of February 14th, both Ms. Treble and Mr. Dubrana woke up around 6.30 AM, feeling extremely unwell. Ms. Treble and Mr. Dubrana at said time experienced dizziness, nausea, blurred vision, weakness, strong headaches, difficulty breathing and difficulty moving.

12. They were very worried what they were experiencing at the time was not normal for them. They both made the decision to immediately go to the lobby of the hotel to report their health symptoms.

13. Ms. Treble on the way to the elevator collapsed and had difficulty getting up. They made the decision to seek help for Ms. Treble.

14. Mr. Dubrana with a hotel employee secured a wheelchair in order to help Ms. Treble reach the area of the lobby. Mr. Dubrana and Ms. Treble alerted the hotel of their symptoms

and the hotel proceeded to call for emergency services and sound an alarm. Eventually all hotel guests were evacuated from the hotel.

15. Ms. Treble and Mr. Dubrana, felt that they had been exposed to carbon monoxide or another air hazard, proceeded to secure transportation and visited the Emergency Department at Ashford Medical Center in order to seek emergency evaluations and treatments.

16. When they both returned to the hotel a couple of hours later, their suspicions were confirmed. They both continued to feel unwell and they still suffered the the lingering effects of the carbon monoxide and/or the air contaminant that caused the intoxication.

17. They were offered and received oxygen therapy from one of the ambulances that were part of the many first responders present at the hotel.

18. Ms. Treble and Mr. Dubrana also observed how this incident affected other hotel guests. They also realized that they and/or other guests could have even died due to the early morning intoxication incident.

19. They also realized that if not for their prompt action to alert the hotel of their intoxication symptoms, more serios and severe complications could have occurred.

20. Since they both had been intoxicated by fumes, and still suffering the effects of said poisoning and exposure, they both procured further medical evaluations and treatments when they returned to their place of domicile days later.

21. For various months after the carbon monoxide intoxication and exposure, both Ms. Treble and Mr. Dubrana complained of dizziness, headaches, blurred vision episodes, brain fog, fatigue, cognitive difficulties, anxiety, depression and other impairments.

22. They were constantly worried since the effects of the intoxication still affected them months later. This also caused them to suffer anxiety and emotional damages similar to PTSD since they did not know of the extent of their damages or injuries.

23. They also did not know if the consequences of the intoxication had caused permanent damages. They still recall how they and other hotel guests could have lost their lives due to the intoxication.

24. As a result of the Double Tree Hotel carbon monoxide/gast contaminant intoxication incident, both Ms. Treble and Mr. Dubrana suffered severe damages that still affect them to this date. To this date they still suffer from headaches and

emotional trauma, and other physical and emotional conditions.

25. The value of all their damages related to this incident, to include past, present and future damages, and mental anguish is estimated in a sum in excess of **ONE MILLION DOLLARS ($1,000,000.00)** for each of them.

26. ECONOMIC DAMAGES: As a result of the Double Tree Hotel carbon monoxide intoxication incident, the vacation to Puerto Rico was ruined. Ms. Treble and Mr. Dubrana both incurred in additional economic damages, to include the cost of medical evaluations and treatments, and the loss of paid work time. All of their economic damages are reasonably estimated in a sum in excess of **THIRTY FIVE THOUSAND DOLLARS ($35,000)** for each of them.

## V. LIABILITY

25. The incident resulting in the serious and severe damages to Ms. Treble and Mr. Dubrana, was caused by the combined and exclusive fault and negligence of all of the Defendants and their employees as will be further detailed.

26. As Inkeeper's, the Double Tree Defendants' and their employees had a duty towards Ms. Treble and Mr. Dubrana to

keep them safe. The Double Tree Defendants failed in their legal obligation to provide a hazard free hotel stay, to include a safe hotel room. The hotel failed in not ensuring that the hotel was equipped with multiple and properly working and installed Carbon Monoxide detectors.

27.  At the time of the incident, the hotel room assigned to them had no visible carbon monoxide detectors.

28.  The Double Tree Hotel also failed to ensure that their hotel equipment was properly updated, serviced, kept, repaired and maintained.

29.  The Double Tree Hotel, relying on a third party only, failed to carry out their own inspections of the hotel equipment and appurtenances that caused the carbon monoxide intoxication damages.

30.  The Double Tree Hotel and its employees failed to install properly working carbon monoxide detection and/or measuring equipment near the industrial equipment that they used and in the enclosed areas of the hotel.

31.  At the very least, the hotel should have invested in replacing and/or in repairing and/in monitoring all worn pipes and equipment, particularly those that produced gas emissions.

32. Their lax and careless attitude in not conducting proper preventive maintenance services and inspections, in the selection of the contractor, and/or in not insisting that their selected contractor carry out proper maintenance services with properly trained employees amounts to negligence.

33. The Double Tree Hotel also failed to install the safety equipment needed in order to detect intoxicating gases. Their lack of action amounts to negligence, since they had the constructive knowledge that some of the industrial equipment in place at the hotel produced carbon monoxide and/or other gas contaminant emissions.

34. At all material times, all the defendants, to include the Double Tree defendants, had a duty to monitor and/or detect the carbon monoxide levels in the air. They failed in carrying out said duty since they lacked properly functioning carbon monoxide detectors nor trained hotel employees capable to perform safety functions.

35. At the very least, if not installed in the common areas of the Hotel, the Double Tree defendants should have installed carbon monoxide detectors in the hotel rooms in order to provide a safe accommodation for their guests. Yet they negligently failed to act.

36.  The accident would not have happened if not for the joint fault and negligence of all the Double Tree Hotel defendants and their employees.

37.  As Puerto Rico Innkeepers' and as owners, supervisors, operators and/or administrators, and employees of a hotel, the defendants and their employees are responsible for their lack of adequate actions to anticipate, identify, repair, maintain, prevent and eliminate the dangerous condition that carbon monoxide exposure due to faulty equipment and appurtenances represented to its hotel guests.

38.  By information and belief, Universal failed in properly inspecting, fixing, correcting, maintain the equipment and the pipes attached to the equipment that produced carbon monoxide and/or other gas contaminants that they sold to the hotel and that they were contractually obligated to maintain.

39.  Universal failed to act and to insist that the Double Tree Hotel defendants have in place properly working and installed carbon monoxide detectors and/or measuring device systems throughout the hotel, and in particular in all closed hotel locations.

40.  Their lack of proactive and negligent actions in the performance of maintenance services, makes Universal also

responsible and liable for all damages suffered by the plaintiffs.

41. All of the above defendants failed to properly comply with standards, practices and industry codes regarding dangerous equipment that produces toxic fumes like carbon monoxide, allowing with said lax attitude, for the carbon monoxide incident to happen and the terrible consequences of the same.

42. The lack of action, the lack of proper working equipment and the combined negligence of all of the defendants regarding dangerous carbon monoxide emissions and/or gases, to include faulty equipment and/or lack of proper carbon monoxide detectors, injured many guests, to include the plaintiffs, and caused serios physical and emotional damages.

43. All named defendants are also responsible for the negligent acts or lack of proactive action of their employees in the poor performance of their duties and obligations regarding the safety and maintenance protocols they needed to follow, to provide maintenance and the inspection of the equipment and pipes that produce carbon monoxide.

44. All named defendants under the legal doctrine of respondeat superior (let the master answer) failed to properly train and supervise their assigned personnel in monitoring,

fixing, supervising, inspecting, detecting, recommending, repairing, replacing worn out and/or faulty equipment that produced carbon monoxide.  They also failed in selecting and installing the safety equipment needed to keep hotel guests safe from intoxicating emissions.

45.  All named defendants failed to properly train and supervise their personnel under the legal doctrine of respondeat superior in the proper selection, use, placing, installation of carbon monoxide detectors and the implementation of preventive and safety protocols to be followed in order to avoid injuries caused by carbon monoxide and/or other toxic contaminants.

46.  Pursuant to Puerto Rico law, and in particular the Civil Code of Puerto Rico, article 1536 and 1540, all defendants and their employees are jointly liable for the damages claimed herein as a result of the carbon monoxide poisoning and/or intoxication incident that occurred at the Double Tree Hotel.

47.  All insurance company defendants, under the Puerto Rico direct-action statute, and as per each of the insurance policies issued to cover the negligent acts of their insureds, are directly liable to the plaintiffs as per the

terms of the insurance policies in effect at the time of the incident, for the negligent acts of the defendants.

48. Plaintiffs demand trial by jury.

   **WHEREFORE**, it is respectfully requested that this Honorable Court enter judgment for the plaintiffs, for the relief demanded in the complaint with the imposition of reasonable attorneys' fees and costs.

   In San Juan, Puerto Rico, this 8th day of February, 2026.


**RIVERA-ASPINALL, GARRIGA**
**& FERNANDINI LAW FIRM**
Attorneys for Plaintiffs
1647 Adams Street
Summit Hills
San Juan PR 00920
Telephone: (787) 792-8644
Facsimile: (787) 792-6475
Email: aspinall@ragflaw.com

**S/Julian Rivera Aspinall**
Julian Rivera-Aspinall
USDC# 208506